**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 21, 2018**

# In the Court of Appeals of Georgia

A18A0045. SECUREALERT, INC. et al. v. BOGGS et al.

A18A0046. JUDICIAL ELECTRONIC MONITORING SERVICE,
    LLC et al. v. BOGGS et al.

ELLINGTON, Presiding Judge.

Candace Boggs and other plaintiffs brought this wrongful death and personal injury action in the State Court of Dougherty County against SecureAlert, Inc., SecureAlert Monitoring, Inc., SecureAlert Enterprise Solutions, Inc., Emerge Monitoring, LLC, Judicial Electronic Monitoring Service, LLC, and Kathy Taylor-Parker.[1] The defendants are electronic pretrial release and monitoring service providers that were responsible for monitoring two men who allegedly shot and killed Jamey C. Spurlock. The trial court denied the providers' motions to dismiss the complaint. We granted the providers' applications for interlocutory appeal to consider

---

[1] The action is pending against other defendants not at issue in these appeals.

whether they are protected from civil liability by statute. We have consolidated these appeals,[2] and, for the reasons explained below, we reverse.

This Court reviews a trial court's ruling on a motion to dismiss de novo, viewing all well-pled allegations in the complaint as true. *Carter v. Cornwell*, 338 Ga. App. 662 (791 SE2d 447) (2016). In the complaint, the plaintiffs[3] alleged that in December 2013 the providers had contracts with the sheriff of Dougherty County to provide electronic monitoring services for defendants given pretrial release. One or more of the providers were monitoring, via ankle bracelets, Demetrice and Kovarious Price, who were awaiting trial on charges of aggravated assault and robbery (Demetrice) and armed robbery, kidnapping, and possession of a firearm during the commission of a crime (Kovarious). The pretrial release bonds ordered by the Superior Court of Dougherty County required "total lock-down house arrest" and the wearing of GPS electronic monitoring ankle bracelets with wireless cell phones. The

---

[2] Securealert, Inc., SecureAlert Monitoring, Inc., SecureAlert Enterprise Solutions, Inc., and Emerge Monitoring, Inc. appeal in Case No. A18A0045. Judicial Electronic Monitoring Service, LLC, and Kathy Taylor-Parker appeal in Case No. A18A0046.

[3] The plaintiffs are Candace Boggs, the mother of one of the decedent's minor children; Maria Fandrich, the mother of another of the decedent's minor children; Jamey N. T. Spurlock, the decedent's adult son; and Mary Spurlock, the executrix of the decedent's estate.

plaintiffs alleged that the providers lost the ability to determine the whereabouts of the Prices and failed to notify law enforcement of that fact. The plaintiffs alleged that in the weeks following the Prices' release under house arrest they repeatedly violated the bond order by leaving their home and that the providers knew, or reasonably should have known, this and failed to notify law enforcement. On December 22, 2013, the Prices allegedly left their residence and shot and killed Jamey C. Spurlock during an armed robbery. The plaintiffs asserted claims for breach of contract (as third party beneficiaries), negligence, and negligence per se and alleged that the providers breached their duty to monitor the Prices, which proximately caused Spurlock's death.

In their motions to dismiss, the providers argued, inter alia, that, taking the plaintiffs' allegations as true, the providers are immune from civil liability for the Prices' criminal acts pursuant to OCGA § 17-6-1.1 (i). OCGA § 17-6-1.1 authorizes a trial court to release a defendant from custody pending the trial of his or her case on the condition that the defendant comply with the terms and conditions of an electronic pretrial release and monitoring program which is approved pursuant to

3

subsection (j) of the Code section. OCGA § 17-6-1.1 (a).[4] The statute also authorizes the sheriff of a county to enter into agreements with approved providers of electronic pretrial release and monitoring services. Id. "Any person or corporation approved by the chief judge of the court and the sheriff in their discretion who meets the [specified] minimum requirements may be approved to provide electronic pretrial release and monitoring services[,]" OCGA § 17-6-1.1 (j), and "[a] bonding company, bonding agent, or probation service provider may be a provider of such services." OCGA § 17-6-1.1 (a).

The immunity provision, OCGA § 17-6-1.1 (i), provides:

No defendant released under an electronic pretrial release and monitoring program under this Code section shall be deemed to be an agent, employee, or involuntary servant of the county or the electronic pretrial release and monitoring provider while so released, working, or participating in training or going to and from the defendant's place of employment or training. *Neither the electronic pretrial release and monitoring provider nor the sheriff shall be civilly liable for the criminal acts of a defendant released pursuant to this Code section.*

---

[4] See also OCGA § 42-1-8 (b) (authorizing sheriffs, subject to specified eligibility requirements, to assign certain persons to a home arrest program under supervision of the sheriff, including persons who are "confined in a county jail (1) after conviction and sentencing, (2) pending completion of a presentencing report, or (3) after return for a violation of the terms of probation").

(Emphasis added.)

As noted by the trial court, there is no Georgia law construing this statute or discussing the immunity of private companies under these circumstances. Because the arguments on appeal involve the meaning of the statute, "the threshold issue is whether the language is plain and unequivocal, in which case judicial construction is not permitted, or whether it is ambiguous, in which case judicial construction is appropriate. A statute is ambiguous when it is susceptible of more than one natural and reasonable interpretation." (Citations and punctuation omitted.) *Fulton County Bd. of Tax Assessors v. Greenfield Investment Group, LLC*, 313 Ga. App. 195, 197-198 (721 SE2d 128) 130 (2011). "[W]hen a statute is plain and susceptible of but one natural and reasonable construction, a court must simply follow the literal language of the statute, unless doing so would lead to absurd or wholly impracticable consequences." (Citation and punctuation omitted.) *City of Atlanta v. City of College Park*, 311 Ga. App. 65, 68-69 (2) (715 SE2d 158) (2011).

When a statute is ambiguous, the cardinal rule of statutory construction is to determine the legislative intent and purpose behind the statute and to effectuate that intent and purpose. *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003); OCGA § 1-3-1 (a). In so doing,

5

[f]irst, courts should construe a statute to give sensible and intelligent effect to all provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless. Second, a court's duty is to reconcile, if possible, any potential conflicts between different sections of the same statute, so as to make them consistent and harmonious. Third, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole. We also presume that when enacting a statute, the General Assembly meant what it said and said what it meant. We do not limit our consideration to the words of one subsection of a statute alone, but consider a particular provision in the context of the statute as a whole as well as the context of other relevant law, constitutional, statutory, and common law alike.

(Citations and punctuation omitted.) *West v. City of Albany*, 300 Ga. 743, 745 (797 SE2d 809) (2017). In addition,

it has always been a rule of construction of statutes that those in derogation of the common law, that is[,] those which give rights not had under the common law, must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts.

6

(Citation and punctuation omitted.) *Delta Airlines, Inc. v. Townsend*, 279 Ga. 511, 512 (1) (614 SE2d 745) (2005).

As noted above, the second sentence of OCGA § 17-6-1.1 (i) provides that an electronic pretrial release and monitoring provider "shall not have no civil liability for the criminal acts of a defendant released pursuant to [the] Code section." The plaintiffs argue that interpreting this provision as protecting electronic pretrial release and monitoring providers from all civil liability for the criminal acts of monitored defendants renders the first sentence of the subsection superfluous. Specifically, the plaintiffs contend that the first sentence of the subsection (a supervised defendant "shall not be deemed to be an agent, employee, or involuntary servant of . . . the electronic pretrial release and monitoring provider while so released, working, or participating in training or going to and from the defendant's place of employment or training"[5]) protects a provider from imputed or vicarious liability based on the doctrine of respondeat superior, where the principal is entirely responsible for the agent's negligence and the liability cannot be apportioned between the principal and

---

[5] OCGA § 17-6-1.1 (i).

7

the agent/tortfeasor.[6] The plaintiffs contend that, if the second sentence provides absolute immunity to the monitoring company there would be no need for the General Assembly to state in the first sentence that monitoring companies are not liable based on agency principles or the theory of respondeat superior "because the absolute immunity would subsume that lesser immunity." We disagree.

Under the first sentence of OCGA § 17-6-1.1 (i), if the conditions of a defendant's pretrial release permitted him or her to drive to work, and the defendant negligently injured someone while driving, the provider would not be vicariously liable for the defendant's negligence based on a theory that an agency or master-

---

[6] See OCGA §§ 51-2-1 (a) ("For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent."); 51-2-2 ("Every person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily."); 51-12-33 (b) ("Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall . . . apportion its award of damages among the persons who are liable according to the percentage of fault of each person."); *PN Express v. Zegel*, 304 Ga. App. 672, 680 (5) (697 SE2d 226) (2010) (The apportionment statute, OCGA § 51-12-33 (b), "does not apply where a defendant employer faces only vicarious liability under the doctrine of respondeat superior because the employer and employee are regarded as a single tortfeasor.") (citations and punctuation omitted); *Piedmont Hospital v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003) ("Two elements must be present to render a master liable under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business.") (citation and punctuation omitted).

8

servant relationship is created by the monitoring program. The second sentence of the subsection, however, addresses an entirely different kind of derivative liability, liability for the criminal acts of another. Under Georgia law, "as a general rule, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others." (Citation omitted.) *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 201-202 (1) (296 SE2d 693) (1982). An exception to this rule, as explained in Restatement (Second) of Torts § 319 (1965), is that

> [o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.[7]

Under the "public duty doctrine," a municipality's duty to protect the general public cannot be the basis for recovering for injuries sustained from a failure to provide police protection to an individual.[8] "[W]here there is a special relationship between

---

[7] See *Bradley Center, Inc. v. Wessner*, 250 Ga. at 201-203 (1) (Where a private mental health hospital's treatment of a voluntarily committed patient revealed that he would likely cause bodily harm to his wife if he had the opportunity, and the hospital issued an unrestricted weekend pass to the patient and he killed his wife, the hospital could be held civilly liable for its negligence in failing to control the patient.).

[8] *Stevenson v. City of Doraville*, 294 Ga. 220, 222-223 (1) (751 SE2d 845) (2013); *City of Rome v. Jordan*, 263 Ga. 26, 28-29 (1) (426 SE2d 861) (1993). See also *Holcomb*

9

the individual and the municipality which sets the individual apart from the general public and engenders a special duty owed to that individual, [however,] the municipality may be subject to liability for the nonfeasance of its police department." (Citation and punctuation omitted.) *Stevenson v. City of Doraville*, 294 Ga. at 222 (1).

Another example of the general rule is that a landowner is generally not liable to a person who is injured on the landowner's property by an independent criminal act of a third party.[9] A landowner may be held liable for third-party criminal attacks, however, if it had reasonable grounds to anticipate that such a criminal act would be committed and failed to exercise ordinary care to guard against injury to visitors by dangerous characters.[10] Similarly, a person who undertakes the control and

---

*v. Walden*, 270 Ga. App. 730, 731-733 (607 SE2d 893) (2004) (physical precedent only) (Where a police officer failed to arrest a driver for not having a valid driver's license a short time before the driver caused an accident and injured another person, the public duty doctrine prevented the officer and the sheriff from being held liable.); *Landis v. Rockdale County*, 212 Ga. App. 700, 702-704 (445 SE2d 264) (1994) (Where a deputy failed to arrest or restrain a drunk driver from continuing to drive, shortly before a fatal accident, the public duty doctrine prevented the county, the sheriff, and the deputy sheriff from being held liable.).

[9] *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997); see Charles R. Adams, Ga. Law of Torts § 15:1 (updated December 2016) (criminal conduct by a third person).

[10] See *Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323, 330 (801 SE2d 24) (2017); *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997);

supervision of a child is not considered to be an insurer of the child's safety, but such

a person has a duty to use reasonable care to protect the child from any reasonably

foreseeable risk of harm, including the criminal acts of a third party.[11]

In the context of case law that recognizes exceptions to the general common

law rule that there is no duty to prevent a third person from causing physical harm to

*Days Inns of America, Inc. v. Matt*, 265 Ga. 235, 235-236 (454 SE2d 507) (1995); *Walker v. Aderhold Properties, Inc.*, 303 Ga. App. 710, 713 (1) (694 SE2d 119) (2010); *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 462 (2) (590 SE2d 807) (2003); *Metropolitan Atlanta Rapid Transit Auth. v. Allen*, 188 Ga. App. 902, 903 (1) (374 SE2d 761) (1988); see also Restatement (Second) of Torts § 448 (1965) ("The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."); *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 366 (1) (729 SE2d 378) (2012) (A jury is allowed to apportion damages under OCGA § 51-12-33 between a property owner that negligently fails to prevent a foreseeable criminal attack and the criminal assailant, whose actions are wholly separate from any action or inaction of a property owner; the doctrine of respondeat superior is not the basis for the owner's liability.); *Accor North America, Inc. v. Todd*, 318 Ga. App. 317, 320 (733 SE2d 846) (2012) (accord).

[11] *Bull St. Church of Christ v. Jensen*, 233 Ga. App. 96, 99-100 (1) (504 SE2d 1) (1998); see also *Wallace v. Boys Club of Albany, Georgia, Inc.*, 211 Ga. App. 534, 537 (2) (439 SE2d 746) (1993) ("[A] jury could reasonably find that the abduction and abuse of young children who are not properly supervised is foreseeable and is one of the dangers parents and other care givers expressly protect children from by providing them proper supervision and care[,]" even if no similar act had previously occurred on or near the care giver's premises.).

another, we conclude, from the express terms of the second sentence of OCGA § 17-6-1.1 (i), that the General Assembly intended to preclude any such exception from limiting the general rule in the context of suits against electronic monitoring companies. Because the first sentence of subsection (i) shields monitoring programs from vicarious liability for a supervised defendant's negligence, by preventing a finding that an agency or master-servant relationship arises between them, while the second sentence shields a provider from other forms of derivative liability for a supervised defendant's criminal acts, we conclude that the second of the subsection sentence does not render the first sentence superfluous.

The plaintiffs also argue that reading subsection (i) together with subsections (j) and (k) demonstrate the General Assembly's intent to hold monitoring providers responsible for their own actions and failures to act. Subsection (j) sets out the minimum requirements for being approved to provide electronic pretrial release and monitoring services.[12] These requirements include compliance with all federal, state,

---

[12] OCGA § 17-6-1.1 (j) provides in pertinent part:

Any person or corporation approved by the chief judge of the court and the sheriff in their discretion who meets the following minimum requirements may be approved to provide electronic pretrial release and monitoring services:
        (1) The provider shall comply with all applicable

12

and local laws. Subsection (j) does not illuminate the General Assembly's intention with regard to the limits on a provider's potential liability for negligence. Subsection (k) provides various reasons a sheriff may remove a provider from the list of approved providers, including the failure to monitor a defendant that the provider was required to monitor.[13] This subsection gives the sheriff the authority to deprive a

federal, state, and local laws and all rules and regulations established by the chief judge and the sheriff in counties where the provider provides electronic pretrial release and monitoring services;
. . .
(4) The provider shall provide simultaneous access to all records regarding all monitoring information, GPS tracking, home confinement, and victim protection regarding each person placed on electronic pretrial release and monitoring; and
(5) The provider shall act as surety for the bond.

[13] OCGA § 17-6-1.1 (k) provides:

(k) The sheriff shall maintain a list of approved providers of electronic pretrial release and monitoring services. The sheriff, in his or her discretion, may temporarily or permanently remove any provider from the list of approved providers should the provider:
(1) Fail to comply with the requirements of this Code section;
(2) Fail to monitor properly any defendant that the provider was required to monitor;
(3) Charge an excessive fee for use and monitoring of electronic monitoring equipment; or
(4) Act or fail to act in such a manner that, in the discretion of the sheriff, constitutes good cause for removal.

provider of its eligibility to provide monitoring services, but, again, it does not illuminate the General Assembly's intention with regard to whether a provider is subject to suit by a third party who is injured as a result of the provider's failure to monitor.

The plaintiffs concede that the second sentence of subsection (i) provides monitoring providers with immunity from liability for the criminal acts of a defendant released pursuant to OCGA § 17-6-1.1, and they urge the Court to construe OCGA § 17-6-1.1 (i) as immunizing providers *solely* from vicarious liability. The plaintiffs contend that the General Assembly did not intend, however, to protect electronic pretrial release and monitoring providers from all civil liability, "even for their own negligent or willful failure to monitor defendants released under the monitoring program." This argument is unavailing. Granted, OCGA § 17-6-1.1 does not purport to confer immunity from liability for every conceivable tort that could arise from a monitoring company's business operations.[14] By its express terms, however, the Code section confers immunity on monitoring providers from liability for the criminal acts

_____

[14] Hypothetically, for example, a monitoring company's negligent acts could directly injure someone if an employee negligently applied an electronic monitoring bracelet to a defendant's ankle such that the device restricted blood circulation and injured the defendant or if an employee conducting company business drove a vehicle negligently and injured another driver.

14

of a supervised defendant, and the plaintiffs' claims seek to impose just such derivative liability for the criminal acts of two defendants the providers monitored. No matter how negligent the providers in this case may have been in conducting their monitoring programs, the plaintiffs would have suffered no injury absent the Prices' criminal acts, just as a visitor would not be harmed by a premises owner's negligent security until the criminal actions of the wrongdoer. The supervised defendants' criminal acts cannot be carved away from the providers' negligence as the source of the plaintiffs' theory of recovery because they are essential to establishing the required chain of but-for causation. That is, the fact that the plaintiffs have alleged that the providers were negligent in performing their statutory and contractual duties, and made it possible for the Prices to commit an act of violence in the community, does not change the fact that they seek to hold the providers derivatively liable for the criminal acts of defendants the providers were monitoring.

Having considered all of the plaintiffs' arguments, we discern no ambiguity in OCGA § 17-6-1.1 (i). Accordingly, we must simply follow the literal language of the statute, unless doing so would lead to absurd or wholly impracticable consequences. *City of Atlanta v. City of College Park*, 311 Ga. App. at 68-69 (2).

15

The plaintiffs argue "on a policy level" that construing OCGA § 17-6-1.1 (i) as barring their claims, which they characterize as providing "absolute immunity" to monitoring companies, would disserve the legislative purpose of balancing "the goals of reducing the cost of pretrial detention, on the one hand, and ensuring public safety while these defendants are released and awaiting trial, on the other." When the General Assembly enacted OCGA § 17-6-1.1, its stated purposes included, inter alia, "to better ensure ongoing protection of crime victims" through the use of "global positioning satellite (GPS) tracking and monitoring of pretrial release offenders" and to create "instant alert capabilities to law enforcement in the event terms of pretrial release are violated." Ga. Laws 2009, p. 691 (Act 139) § 1. The plaintiffs argue that

> it makes no sense to immunize [providers] from liability for their own
> negligence in operating a program that creates such obvious public risks
> if poorly managed. OCGA § 17-6-1.1 (i) must be applied in a way that
> preserves the normal incentives that tort liability creates for companies
> to reduce the risks that are within their control by taking reasonable care
> for others' safety.

We agree that a pretrial release program creates obvious public risks if supervision, whether by a sheriff or by a private monitoring company, is poorly managed, as the plaintiffs' tragic loss so painfully demonstrates. But we conclude that preventing

16

persons who are injured by the criminal acts of defendants who are released from pretrial detention from recovering against private monitoring companies is not an absurd or wholly impracticable consequence. Generally, where the sheriff, not a private monitoring company, is responsible for supervising defendants awaiting trial, a person who is injured by the criminal acts of an arrestee would not be able to recover against the sheriff.[15] Moreover, allowing private monitoring companies to be exposed to liability for the criminal acts of supervised defendants would affect the cost of the monitoring services. We must assume that the General Assembly weighed the costs and the benefits before enacting the statute. And reference to Georgia's Code shows that the General Assembly has conferred limited types of immunity to particular classes of actors in many other situations; we must assume the decision to

---

[15] See *City of Rome v. Jordan*, 263 Ga. at 30 (3) (municipality held not liable under the public duty doctrine for failure to provide police assistance when called); *Ratliff v. McDonald*, 326 Ga. App. 306, 309-312 (1), (2) (756 SE2d 569) (2014) (sheriff and deputies in their official capacities held immune from claims by jail visitor injured by another visitor); *Collie v. Hutson*, 175 Ga. App. 672, 673 (2) (334 SE2d 13) (1985) (sheriff and deputies held not liable for death of a bystander killed by a prisoner who escaped while being transported to a dentist's office); but see *Clarke v. Freeman*, 302 Ga. App. 831, 837 (2) (692 SE2d 80) (2010) (members of sheriff's department not entitled to summary judgment on claim by court employee for injuries caused by escaping prisoner where evidence supported a finding that prisoner's violence was foreseeable).

17

confer seemingly unlimited immunity in this context was intentional.[16] Consequently,

---

[16] See, e.g., OCGA §§ 20-2-1001 (b) ("An educator shall be immune from criminal liability for any act or omission concerning, relating to, or resulting from the discipline of any student or the reporting of any student for misconduct, provided that the educator acted in *good faith*.") (emphasis added); 31-7-132 (a) ("No professional health care provider nor any individual who serves as a member or employee of a professional health care provider or review organization nor any individual who furnishes counsel or services to a professional health care provider or review organization shall be held, by reason of the performance of peer review activities, . . . to be civilly liable under any law unless he was *motivated by malice* toward any person affected by such activity."); 31-11-8 (b) ("A physician shall not be civilly liable for damages resulting from that physician's acting as medical adviser to an ambulance service, . . . if those damages are not a result of that physician's *willful and wanton negligence*.") (emphasis added); 42-3-51 (d) ("No agency or community service officer shall be liable at law as a result of any of such agency's or community service officer's acts performed while participating in a community service program" for probationers. "This limitation of liability shall not apply to actions on the part of any agency or community service officer which constitute *gross negligence, recklessness, or willful misconduct*.") (emphasis added); 51-1-20 (a) ("A person serving with or without compensation as a member, director, or trustee, or as an officer of the board without compensation, of any nonprofit hospital or association or of any nonprofit, charitable, or eleemosynary institution or organization or of any local governmental agency, board, authority, or entity shall be immune from civil liability for any act or any omission to act arising out of such service if such person was acting in *good faith* within the scope of his or her official actions and duties and unless the damage or injury was caused by the *willful or wanton misconduct* of such person.") (emphasis added); 51-1-41 ("Sports officials who officiate amateur athletic contests at any level of competition in this state shall not be liable to any person or entity in any civil action for injuries or damages claimed to have arisen by virtue of actions or inactions related in any manner to officiating duties within the confines of the athletic facility at which the athletic contest is played[, except for] . . . caus[ing] injury or damage to a person or entity by actions or inactions which are *intentional, willful, wanton, reckless, malicious, or grossly negligent*.") (emphasis added); cf. Ga. Const. of 1983, Art. 6, § 8, ¶ I ("District attorneys shall enjoy immunity from private suit for actions arising from the performance of their duties.").

18

we simply cannot *apply* OCGA § 17-6-1.1 (i) in a way that preserves the normal incentives that tort liability creates for companies to reduce the risks that are within their control, as the plaintiffs suggest, when, by its plain terms, it is not *written* in that way. To do so would usurp the General Assembly's Constitutional power to decide public policy and to implement that policy by crafting laws.[17]

Because OCGA § 17-6-1.1 (i) shields the providers from civil liability for the criminal acts of the Prices, the trial court erred in denying the providers' motion to dismiss.

*Judgment reversed. Bethel, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[17] Ga. Const. of 1983, Art. I, § II, ¶ III (separation of legislative, judicial, and executive powers); *Wells Fargo Bank, N.A. v. Jenkins*, 293 Ga. 162, 165 (744 SE2d 686) (2013) (Where a statute did not provide for certain duties or the performance of or refraining from any specific acts, and did not articulate or imply a standard of conduct or care, the courts could not read the clear "aspirational statement of legislative policy" as establishing a legal duty, as that would usurp legislative authority.); *Chase v. State*, 285 Ga. 693, 698 (2)(681 SE2d 116) (2009) (Courts may not usurp the General Assembly's legislative role and legislate by judicial fiat by engrafting language from one Code subsection onto another.); *Perdue v. Baker*, 277 Ga. 1, 14 (586 SE2d 606) (2003) ("The core legislative function is the establishment of public policy through the enactment of laws.") (footnote omitted); *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) ("[T]he legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional.") (citations and punctuation omitted); *Groover v. Johnson Controls World Svc.*, 241 Ga. App. 791, 794 (527 SE2d 639) (2000) (Courts may not "rewrite a statute under the guise of interpreting it." Such changes must be made by the legislature, "not by judicial fiat.") (citations omitted).